PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| COLLABO INNOVATIONS, INC., a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., both Delaware Corporations<br><br>Defendants. | Case No. 6:24-cv-00472-CRW<br><br>**JURY TRIAL DEMANDED**<br><br>PUBLIC VERSION |

## DEFENDANTS' OPPOSED MOTION TO STRIKE
## <u>PLAINTIFF'S UNTIMELY EXPERT INFRINGEMENT THEORIES</u>

PUBLIC VERSION

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND .................................................................................................... 2

        A.      Claim 1's "Save" and "Restore" Steps .................................................... 2

        B.      Collabo's Final Infringement Contentions ("FICs") ............................... 3

        C.      Dr. Wong's New Infringement Theories .................................................. 3

                1.      ████████████████████████ Products ......................................... 3

                2.      ███████████████████████████████ Products ............................ 4

III.    LEGAL STANDARD ............................................................................................. 6

IV.     ARGUMENT ......................................................................................................... 6

        A.      Dr. Wong's infringement theories are new and untimely ........................ 6

        B.      Dr. Wong's new infringement theories should be stricken ...................... 8

                1.      Collabo has no adequate explanation for its failure to timely
                        disclose its new infringement theories .......................................... 8

                2.      Qualcomm has suffered prejudice from Dr. Wong's new theories ........... 9

                3.      A continuance would compound the prejudice to Qualcomm .................. 10

                4.      The importance of Collabo's new infringement theories is
                        outweighed by the prejudice to Qualcomm ................................... 10

V.      CONCLUSION ..................................................................................................... 10

PUBLIC VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett v. Atl. Richfield Co.*,
    95 F.3d 375 (5th Cir. 1996) ................................................................................................. 10

*Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*,
    951 F.3d 248 (5th Cir. 2020) ................................................................................................. 6

*Connectel, LLC v. Cisco Sys., Inc.*,
    391 F. Supp. 2d 526 (E.D. Tex. 2005) ................................................................................... 9

*Hamburger v. State Farm Mut. Auto. Ins. Co.*,
    361 F.3d 875 (5th Cir. 2004) ............................................................................................... 10

*Tomax AS v. Turbo Drill Indus., Inc.*,
    Case No. 6:21-cv-00260-ADA, 2023 WL 3171744 (W.D. Tex. Apr. 6, 2023) ........................... *passim*

## I.    INTRODUCTION

In patent infringement cases like this one, the "well-settled" rule is that "expert infringement reports may not introduce theories not previously set forth in infringement contentions." *Tomax AS v. Turbo Drill Indus., Inc.*, Case No. 6:21-cv-00260-ADA, 2023 WL 3171744, at *2 (W.D. Tex. Apr. 6, 2023) (citation modified). Here, Collabo has done just that by offering two previously undisclosed infringement theories in the recently served report of its expert, Dr. Daniel Wong, concerning the "save" and "restore" steps in the asserted patent claims.

The new theories advanced by Dr. Wong are wholly distinct from the those disclosed by Collabo in its Final Infringement Contentions ("FICs") last year. The late disclosure of Dr. Wong's new theories is particularly egregious because Qualcomm produced documents describing the same features cited by Dr. Wong before Collabo served its FICs. Because Dr. Wong's new theories were not the subject of fact and claim construction discovery—both of which are now closed—the prejudice to Qualcomm from Collabo's late disclosure is severe. Qualcomm relied on Collabo's FICs to develop its non-infringement and invalidity defenses, as well as its overall discovery strategy. This involved producing gigabytes of source code files and documents, presenting fourteen Qualcomm employees for deposition (including five current and two former engineers), and providing extensive discovery on Qualcomm's prior art MSM7500 chip, which practiced Collabo's patent claims in the same manner alleged in the FICs.

By introducing two wholly new infringement theories at this late stage of the case, Collabo has fundamentally deprived Qualcomm of its ability to develop its defenses. This is precisely the type of "impermissibl[e] substitut[ion of] a new theory" that this Court has held warrants exclusion of expert testimony. *Tomax*, 2023 WL 3171744, at *2. Accordingly, Qualcomm respectfully moves to strike and exclude Collabo's new infringement theories submitted by Dr. Wong with respect to the "save" and "restore" steps in the asserted patent claims.

1

PUBLIC VERSION

## II.    BACKGROUND

### A.    Claim 1's "Save" and "Restore" Steps

One way to extend the battery life of mobile phones and laptops is to reduce the power consumed. "Power collapse" technologies do so by shutting down the central processor unit ("CPU") core when idle. Qualcomm has used power collapse technologies for decades. The asserted patent in this case, U.S. Patent No. 7,930,575 ("the '575 Patent"), purports to improve upon existing power collapse technologies by using a set of steps in a pair of "microprogram[s]."

Asserted claim 1 of the '575 Patent recites a "microcontroller" comprising a CPU, power supply unit, power supply control unit, information holding unit, and clock generator. Ex. 2[1] at 18:46–19:24. Relevant here, claim element 1[g] provides that, in response to a shutdown signal, the CPU begins a power collapse process and performs what can be referred to as a ***"save" step*** in which the CPU executes a "power shutdown microprogram" and information is evacuated to memory so data is preserved during shutdown.[2] *Id.* at 18:59–64. Then, to resume operation after shutdown, element 1[o] provides that the CPU performs a ***"restore" step*** by executing a "power supply restoration microprogram" and the saved information is "restored" to the CPU and allows the device to continue operation. *Id.* at 19:18–24. These elements are reproduced below:

| | |
|---|---|
| **1[g]** "save" | the CPU, upon receiving the shutdown request signal, executes a power shutdown microprogram, evacuates the information necessary in proceeding with the program to the information holding unit, and outputs an evacuation completed signal to the power supply control unit after evacuation is completed, |
| **1[o]** "restore" | the CPU, upon receiving the restoration request signal, executes a power supply restoration microprogram, restores the information necessary in proceeding with the program and evacuated in the information holding unit in time of power shutdown, and then branches a process to an address indicated by a program counter to continue program execution from a shutdown state. |

---

[1] All exhibits are attached to the Declaration of Christopher Eppich, filed concurrently herewith.
[2] For convenience, the parties have referred to elements of claim 1 by letter—*e.g.*, 1[pre], 1[a], 1[b]. A chart from Dr. Wong's report showing this convention is attached as Ex. 6.

2

PUBLIC VERSION

**B.    Collabo's Final Infringement Contentions ("FICs")**

Collabo served its FICs on September 26, 2025 with a single claim chart for all products. In the FICs, Collabo began its infringement argument by asserting that the claimed "CPU" corresponds to the *CPU core* in the accused Qualcomm processors—not other elements in the larger CPU subassembly. Ex. 3  at 9–11 ██████████████████████████

Collabo argued the save step is met "when…the CPU [core]…executes a power shutdown microprogram and evacuates the information necessary in proceeding with the program to the information holding unit." *Id.* at 40–41. Further, Collabo asserted the "power shutdown microprogram" is met by specific assembly code and firmware—specifically, ████████████████████████████████████████—that evacuates the information from the CPU to the information holding unit. *Id.* at 40–45.

Collabo argued the restore step is met by assembly code and firmware—specifically, ████████████████████████████████████████—that is the "power supply restoration microprogram" for restoring the information to the CPU. *Id.* at 83–89.

**C.    Dr. Wong's New Infringement Theories**

Collabo served Dr. Wong's infringement expert report on April 9, 2026 with two claim charts – one for ███ products and one for ███ products. *See* Ex. 4 ¶¶ 116, 118, 125; Exs. 7, 8.

**1.    ████████████████████ Products**

Dr. Wong's infringement chart for the ███ products does not rely on the assembly code and firmware executed on a CPU core that Collabo identified in the FICs. Instead, for ███ products, Dr. Wong contends the save and restore steps are satisfied by █████████ ████████████████████████ Ex. 7 at 29–33, 48–49.

Dr. Wong first asserts the claimed "CPU" corresponds to the *CPU core* (*i.e.,* ████████ ██████████████████████) (shown in orange below) in ███ products, *see id.* at 5:

3

PUBLIC VERSION



Then for the "save" step, unlike the FICs, instead of pointing to assembly code and firmware, Dr. Wong points to ███████████████████████████████ ████████████████." *Id.* at 30 ███████████████████████████████

████████████████████████████████████████████████████

For the "restore" step, Dr. Wong cites ███████████████████████████ ███████████████████████ *Id.* at 48–49 ███████████████████████

Critically, ███████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ *See, e.g.*, Ex. 9 (███████████████) at 108, 110.

**2.** ████████████████████████████████ **Products**

Dr. Wong's infringement chart for the ███ products similarly does not rely on the assembly code and firmware executed on a CPU core as Collabo identified in the FICs. Instead, for ███ products, Dr. Wong contends the save and restore steps are satisfied by specific signals from the ██████████████. Ex. 8 at 30–33, 48–49.

In a change from the FICs and from the ███ chart, Dr. Wong stretches the meaning of the "CPU" for the ███ products to include the broader "***CPU subsystem***," *id*. at 7–8 (red box below):



4

Dr. Wong's expansion of the claimed "CPU" to include the entire *CPU subsystem* (entire red box; not just the CPU core in orange above) is significant because ███████████████████████ ████████████████████████████████).[3]

Then for the "save" step, having defined the ██████████████████████ to be part of the claimed "CPU," Dr. Wong next identifies certain ███████████████████████ ██████████ as the claimed "CPU…execut[ing] a power shutdown microprogram," *id.* at 31–32:

███████████████████████████████████████

For the restore step, Dr. Wong identifies ███████████████████████████ ███████ as the claimed "CPU…execut[ing] a power supply restoration microprogram," *id.* at 59:

███████████████████████████████████████

Dr. Wong then relies ██████████ for the remaining information restoring elements of the limitation.

*See id.* at 60–61 ███████████████████████████████████████

███████████████████████████████████[4]

_____

[3] Dr. Wong's inclusion of the ██████ as part of the "CPU" raises additional disclosure issues because, for element 1[d], Dr. Wong separately points to the ██████ as being an "information holding unit for holding information *evacuated from the CPU.*" Ex. 8 at 16. Neither the FICs nor Dr. Wong's expert report explain how the CPU can "evacuate[]" information to itself.

[4] On June 5, 2026, the Parties conferred in a good-faith attempt to resolve the matter by agreement. Collabo stated that it opposes this motion and that it adequately disclosed Dr. Wong's theories.

Critically, ████████████████████████████████ are the assembly code and firmware accused by Collabo in the FICs.

## III.    LEGAL STANDARD

"It is well-settled that in patent litigation, expert infringement reports may not introduce theories not previously set forth in infringement contentions." *Tomax*, 2023 WL 3171744, at *2 (citation modified). Ultimately, "the critical question in deciding whether to strike portions of an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Id.* (citation modified).

The Fifth Circuit directs courts to "consider four factors when determining whether to exclude expert evidence as a sanction for the violation of a scheduling order." *Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020). Those factors are: (1) "the explanation for the failure to [disclose] the [opinion]"; (2) the "potential prejudice in allowing the testimony"; (3) "the availability of a continuance to cure such prejudice"; and (4) "the importance of the testimony." *Id.* at 270; *see also Tomax*, 2023 WL 3171744, at *2.

## IV.    ARGUMENT

### A.    Dr. Wong's infringement theories are new and untimely

Collabo's infringement theory disclosed in the FICs for the microprograms of the save and restore steps was that the CPU core executes assembly instructions and firmware ████ ████████████████████████ *See* Ex. 3 at 40–45, 83–89. Critically, Collabo's FICs do not contain any mention of ████████████████ with respect to these two microprograms.

Dr. Wong's new theories are wholly different. He first separates the accused products into two groups: ████ and ████. For ████ products, Dr. Wong contends ██████████ practice the save and restore steps. For ████ products, Dr. Wong first stretches the meaning of "CPU" to include the entire CPU subsystem before contending ██████ are the claimed "microprogram"

6

in the save step, and ███████████████ practice the restore step. Dr. Wong does not mention or refer to any of the assembly instructions or firmware that Collabo pointed to in its FICs, nor is there any disclosure or explanation in the FICs or Dr. Wong's report of any relationship between the newly-accused ███████████████ and the originally-accused assembly code and firmware. The table below illustrates in red the impact of Dr. Wong's new infringement theories:

Collabo may point to a tangential mentions of the isolated terms "████████████ in its FICs to suggest that Qualcomm was somehow on notice of Dr. Wong's new ████████ ████ theories. *See* Ex. 3 at 25–31. But simply mentioning █████ in the context of a different claim element or citing a document discussing ████ while hiding the theory that the ███ is the claimed "CPU" does not provide the requisite notice of Collabo's infringement theories. Rather, it does the opposite. It shows Collabo was aware of ███████████ signals, and yet deliberately failed to disclose its relevance to the "save" and "restore" steps in its FICs as it was required to do.

Dr. Wong's new infringement theories are precisely the type of "impermissibly substituted new theories" that have led courts to strike expert opinions. *Tomax,* 2023 WL 3171744, at *2, *4 (citation modified) (striking new theories "not identified in the final infringement contentions" that "take positions diametrically opposite from the infringement contentions").

7

### B.    Dr. Wong's new infringement theories should be stricken

Each of the Fifth Circuit's factors for evaluating a motion to strike untimely expert opinions favors striking Dr. Wong's new infringement theories for the "save" and "restore" steps.

#### 1.    Collabo has no adequate explanation for its failure to timely disclose its new infringement theories

Qualcomm produced documents and information disclosing ███████████████████████ in its processors *before* Collabo served its FICs on September 26, 2025.[5] Yet, Collabo did not ask any of the *five* current Qualcomm engineers it deposed a single question about ████ in their depositions taken between October 2025 and March 2026. Collabo did ask Qualcomm engineers about ████ Specifically, Collabo questioned *two* engineers about ███ in their October and November 2025 depositions and another *two* engineers in their March 2026 depositions. Despite knowing about the relevance of ████████████████ to the save and restore steps during the fact discovery period, Collabo never moved to amend its infringement contentions.

Instead, Collabo strategically delayed its disclosure until Dr. Wong's report was served on April 9, 2026. Courts have stricken untimely disclosures under these same circumstances. *See, e.g., Tomax*, 2023 WL 3171744 at *1 (striking infringement theories that were "new and different from the [Plaintiff's] final infringement contentions" and observing "Plaintiff never moved for leave to amend its FICs during the remainder of fact discovery").

---

[5] *E.g.*, a technical presentation produced to Collabo in February 2025 explains that ████ ███████████████████████████████████████████████████ Ex. 1 at QCOLLABO_0040653. Another technical document produced to Collabo in November 2025 further explains ███████████████████████████████████████ ███████████████████████████████████████████ Ex. 9 at 108.

PUBLIC VERSION

### 2.    Qualcomm has suffered prejudice from Dr. Wong's new theories

"[P]rejudice occurs when the Defendant is forced to respond to infringement theories that it sees for the first time in the expert's infringement report." *Tomax*, 2023 WL 3171744, at *4. This is because the purpose of infringement contentions is to ensure parties can "formulate, test, and crystalize their infringement theories" early in the case, so that "the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial, and beyond." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527–28 (E.D. Tex. 2005).

Qualcomm has been prejudiced by Collabo's introduction of new infringement theories for the first time in Dr. Wong's report. In reliance on Collabo's original infringement theory in its FICs, the parties engaged in extensive discovery, with Qualcomm producing gigabytes of source code files and documents for the accused processors. Qualcomm also developed its non-infringement and invalidity defenses based on Collabo's infringement theory. Indeed, Qualcomm expressly conditioned invalidity arguments as being met "under Collabo's theory of infringement" as articulated in Collabo's FICs. *See, e.g.*, Ex. 5 ¶¶ 699–701, 747–749. This included presenting engineer testimony and documentation describing how Qualcomm's prior art MSM7500 chip implemented power collapse and the claimed save and restore steps using assembly code and firmware before the '575 Patent was filed. *See, e.g.*, *id.* ¶¶ 586–628 (collecting evidence).

Within a compressed expert discovery period, Qualcomm had to set aside its defenses formulated against Collabo's original theory, and quickly collect, review and produce further technical information and source code regarding the newly accused ███████████████ for the ███ accused products. Qualcomm then had to work with its experts to reevaluate prior arguments and develop defenses to Dr. Wong's new theories. By introducing a new infringement theory at this late stage, Collabo deprived Qualcomm of the opportunity to fully address the

theories during discovery or explain why it does not infringe and why the claim is invalid.

### 3.    A continuance would compound the prejudice to Qualcomm

The prejudice from allowing Collabo to add a wholly new infringement theory at this stage in the case would not be mitigated by extended case deadlines. Rather, it would compound the prejudice to Qualcomm by forcing Qualcomm to absorb the significant expense of investigating Collabo's new theories while engaging in additional out-of-time fact discovery and supplemental expert discovery that would have otherwise been unnecessary. Because any "continuance would have resulted in additional delay and increase the expense of defending the lawsuit," this factor strongly favors striking Dr. Wong's new theories. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (citation modified).

### 4.    The importance of Collabo's new infringement theories is outweighed by the prejudice to Qualcomm

Collabo will undoubtedly argue that Dr. Wong's infringement theories are central to its case, particularly after having seen Qualcomm's invalidity contentions and prior art MSM7500 chip (which practices the save and restore steps the same way Collabo alleged in the FICs). But "the importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (citation modified). Collabo's interest in having Dr. Wong present an opinion based on these new theories does not outweigh the prejudice to Qualcomm from its late disclosure. *See Tomax*, 2023 WL 3171744, at *2, *10 (striking portion of expert report, granting summary judgment to Defendant, and dismissing the case with prejudice because "[Plaintiff] cannot meet its burden of proof at trial for any of the asserted claims" in light of the stricken testimony).

## V.    CONCLUSION

For the foregoing reasons, Qualcomm's motion to strike should be granted.

PUBLIC VERSION

Dated: June 5, 2026

Respectfully submitted,

/s/ Christopher K. Eppich
Deron R. Dacus (ddacus@dacusfirm.com)
State Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543

Richard L. Rainey (rrainey@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-5565

Christopher K. Eppich (ceppich@cov.com)
State Bar No. 24077134
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800

Anupam Sharma (asharma@cov.com)
Hyun Byun (hbyun@cov.com)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
(650) 632-4709

*Attorneys for Defendants Qualcomm*
*Incorporated and Qualcomm Technologies, Inc.*

11

PUBLIC VERSION

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on June 5, 2026 counsel for Defendants and counsel for Plaintiff met and conferred in good faith by email. The discussions have conclusively ended in an impasse leaving an open issue for the court to resolve.

*/s/ Christopher K. Eppich*
Christopher K. Eppich

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 5, 2026 all counsel of record will be served the foregoing document via electronic mail/sftp.

*/s/ Christopher K. Eppich*
Christopher K. Eppich

12